UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER VALDEZ,<br><br>Defendant. | No.  1:15-cr-00329-DAD-BAM<br><br>ORDER DENYING DEFENDANT VALDEZ'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C § 3582(c)(1)(A)<br><br>(Doc. No. 181) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought by defendant Christopher Valdez. (Doc. No. 181.) That motion is based in part on the risks allegedly posed to defendant Valdez by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On November 1, 2018, defendant Valdez entered a plea of guilty to Count Four of the Second Superseding Indictment returned in this action charging defendant and a co-conspirator with distribution of and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. Nos. 19, 115, 116.) On March 4, 2019, the court sentenced defendant to a term of imprisonment of 102 months in the custody of the U.S. Bureau of Prisons

1

("BOP") to be followed by a 36-month term of supervised release. (Doc. Nos. 153, 154.) The court also imposed the mandatory $100.00 special assessment. (Doc. No. 154 at 6.)

Defendant Valdez is currently serving[1] his sentence at Federal Correctional Institution, Lompoc ("FCI Lompoc"). (Doc. No. 181 at 4; Doc. No. 183 at 3.) As of the date of this order, defendant has served approximately 63 months, or 61% of his 102-month custodial sentence. (Doc. No. 186-1 at 2–3.) Accounting for good time credit, his projected release date is October 17, 2022. (*Id.* at 2.)

On February 8, 2021, defendant Valdez, proceeding *pro se,* filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 181.) The court then referred defendant's motion to the Federal Defender's Office. (Doc. No. 182.) On April 12, 2021, appointed counsel filed a notice reporting that defendant's motion would not be supplemented. (Doc. No. 183.) After an extension of time was requested and granted, the government filed its opposition to the pending motion on June 23, 2021. (Doc. No. 186.) Defendant did not file a reply.

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*,

---

[1] In its opposition the government states that on May 26, 2021, defendant Valdez was transferred to state custody to resolve criminal charges pending against him in Fresno County Superior Court, and that the government was unsure when he would be returned to federal custody. (Doc. No. 183 at 3.) However, on September 2, 2021, the court performed searches both using petitioner's name and his BOP Register number on the BOP inmate locator website, which indicated defendant Valdez was incarcerated at that time at FCI Lompoc. *See* BOP Inmate Locator https://www.bop.gov/inmateloc/ (running separate searches for "Christopher Valdez" and then "75866-097"). The court also performed a search of the Fresno County Jail inmate locator website, which yielded no results for defendant. *See* Fresno Cnty. Jail Inmate Search, https://www.fresnosheriff.org/units/records/inmate-search.html, (running a search for "Christopher Valdez"). Accordingly, this court takes judicial notice of the fact the petitioner is currently incarcerated in FCI Lompoc. Fed. R. Evid. 201.

452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they

---

determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release.  District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts:  There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

5

has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.     Administrative Exhaustion**

In this case, the parties agree that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 181 at 13; 186 at 4.) Specifically, defendant Valdez states that he submitted a written request for compassionate release to the warden of FCI Lompoc in May 2020, and the motion was filed more than thirty days since BOP had received that request. (*Id.*; *see also* 18 U.S.C. 3582(c)(1)(A)). Accordingly, the court will turn to the merits of defendant's motion.

/////

6

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In his pending motion, defendant argues that extraordinary and compelling reasons warranting the reduction of his custodial sentence to time served exist because:  (1) he suffers from obesity, which according to the Centers for Disease Control and Prevention ("CDC"), places him at a high risk of severe illness from COVID-19, and (2) he is incarcerated at FMC Lompoc, which he contends is "among the worst coronavirus hot spot[s] in the nation." (Doc. No. 181 at 7.)  In particular, defendant asserts that he has a body mass index ("BMI") of "over 30, close to 40 . . . ."[6]  (*Id.* at 6.)  In support of his motion, defendant Valdez argues that the BOP has

---

[5] Here, however, because defendant Valdez is only 40 (soon to be 41) years old (Doc. No. 186-1 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

[6] The court notes that defendant did not include any medical records or provide any evidentiary support for these contentions with his motion; but medical records provided by the government indicate defendant does have a BMI of 38.2.  (Doc. No. 190 at 5—sealed.)

8

generally failed to adequately protect inmates in its custody from the virus and relies upon declarations from doctors and public health experts who provided testimony regarding the conditions in FCI Lompoc in other pending cases, as well as a study conducted by the Department of Justice regarding conditions in the facility in July 2020. (*Id.* at 41–135, 138–140.) Defendant Valdez also states he is vulnerable to re-infection from COVID-19, from which he has previously suffered during his incarceration. (*Id.* at 34–35.)

In its opposition to the pending motion, the government argues that the mere existence of COVID-19 in society or in the correctional institution[7] where defendant Valdez is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (Doc. No. 186 at 7.) The government further argues that defendant Valdez is now fully vaccinated, and although his BOP medical records indicate defendant is obese, these records also show that he previously contracted COVID-19 and has "fully recovered." (*Id.* at 7–8; Doc. No. 190 at 5, 12—sealed.)

The court concludes that defendant has failed to show the existence of extraordinary and compelling reasons calling for his release from confinement in light of the critical fact that he is now fully vaccinated, combined with the fact that he suffered no severe complications when he was infected with COVID-19 over a year ago, despite his obesity.

It is undisputed that obesity is recognized by the U.S. Centers for Disease Control and Prevention ("CDC") as a health condition that may place individuals at a high risk of suffering severe illness from COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021). However, defendant does not dispute that his obesity is being treated and monitored by medical staff at FCI Lompoc. Further, defendant has not provided any evidence in support of his contentions that he

---

[7] The government also argues that prisoners in state custody are ineligible for federal compassionate release because at the time of the government's response, defendant was in state custody. (Doc. No. 186 at 6.) Because defendant has been returned to federal custody at FCI Lompoc, the government's arguments in this regard have been rendered moot.

is at particular risk, and as of the date of this order, the BOP is reporting that there are no inmates and only 1 staff member at FCI Lompoc who currently have confirmed active cases of COVID-19. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited September 19, 2021).

As alluded to above, defendant Valdez received his second dose of the Moderna vaccine on March 30, 2021. (Doc. Nos. 190 at 15—sealed.) Because more than two weeks have passed since receiving his second dose, defendant is now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated Sept. 1, 2021). Here, defendant is seeking his early release from prison based on the argument that he will suffer a severe illness if he were to contract COVID-19 again. According to the CDC, authorized vaccines in the U.S., including the Moderna vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated May 28, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals, like defendant Valdez, are very well protected against becoming severely ill from COVID-19. *See United States v. Ochoa-Alapisco,* No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit,

have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

In light of all of the above, the court concludes that defendant Valdez has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582 (c)(1)(A).  Therefore, his motion for compassionate release will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Valdez' motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned at this time is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker*, 461 F. Supp. 3d at 979.

/////

---

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Defendant contends that a reduction of his sentence is consistent with consideration of the § 3553 sentencing factors because although he was given a significant prison sentence, the sentencing purpose of imposing just punishment does not warrant his exposure to a life-threatening illness. (Doc. No. 181 at 29–30.) He asserts that his current conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment. (*Id.*) Lastly, he states he is fully rehabilitated, has a verifiable release plan, and completed the 500-hour Residential Drug Program on May 6, 2021. (*Id.* at 31.)

The government contends that a reduction in defendant's sentence at this time would be inconsistent with § 3553(a)'s sentencing factors because he has served only a relatively small portion of his original 102-month sentence. (Doc. No. 186 at 8–9.) The government counters that '[g]iven the nature and circumstances of the offense and the history and characteristics of the defendant, compassionate release is not warranted in this case." (*Id.* at 9.) Specifically, the government notes, defendant Valdez "sold one-half pound of methamphetamine to an undercover agent" and then was twice later observed to be offering to supply "pound quantities of methamphetamine." (*Id.*)

As noted above, defendant Valdez is currently serving a 102-month sentence of imprisonment for distribution of and possession with intent to distribute a controlled substance, methamphetamine in violation of 21 U.SC. § 841(a)(1). (Doc. No. 154.) The U.S. Probation Office determined that his total offense level under the advisory sentencing guidelines in this case was 30, based on the 216 grams of methamphetamine involved in his offense of conviction, and his criminal history was II, resulting in a guideline range calling for a term of imprisonment of between 108 and 135 months. (Doc. No. 142 at 10, 18—sealed.) Noting that defendant suffered from drug dependency, the probation officer recommended a low-end guideline sentence of 108 months in BOP custody. (*Id.* at 24—sealed.) The undersigned relied upon its careful consideration of the same § 3553(a) factors in varying somewhat downward from the sentence recommended by probation and imposed a below guidelines sentence of a 102-month term of imprisonment. (Doc. No. 154.) Thus, even if the court were to credit defendant's current belief that he will not reoffend, "[t]he length of the sentence remaining is an additional factor to

consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Valdez has served approximately 60% of the 102-month sentence imposed, even with good time credits are applied. (*See* Doc. No. 186-1 at 2.) In the court's view, considering that defendant already received a below-guideline range sentence, a reduction of his 102-month sentence would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with consideration of the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Valdez has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582 (c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 181) is denied.

IT IS SO ORDERED.

Dated: **September 19, 2021**         /s/ Dale A. Drozd

UNITED STATES DISTRICT JUDGE

13